FILED
United States Court of Appeals
Tenth Circuit

May 13, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BRECEK & YOUNG ADVISORS,
INC.,

        Plaintiff - Appellee,

    v.

LLOYDS OF LONDON SYNDICATE
2003,

        Defendant - Appellant.

No. 12-3011

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. NO. 2:09-CV-02516-JAR)**

---

John R. Mann, Kennedy Childs P.C., Denver, Colorado, for Defendant-Appellant.

Michael J. Abrams (R. Kent Sellers and Kimberly K. Winter with him on the brief), Lathrop & Gage LLP, Kansas City, Missouri, for Plaintiff-Appellee.

---

Before **HARTZ**, **MURPHY**, and **HOLMES**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I. Introduction

Defendant-Appellant Lloyds of London Syndicate 2003 ("Lloyds") appeals the district court's denial of its summary judgment motion and subsequent grant of summary judgment in favor of Plaintiff-Appellee Brecek & Young Advisors, Inc. ("BYA") in an action arising out of a professional liability insurance contract. The district court concluded Lloyds failed to pay sufficient indemnity to BYA for claims brought against BYA in an arbitration before the National Association of Securities Dealers alleging BYA agents mismanaged and unlawfully "churned" the investment accounts of its clients. The court further concluded the claims brought in the arbitration did not relate back to earlier claims brought outside the policy period and, therefore, rejected Lloyds' argument coverage was precluded altogether. Additionally, the court rejected BYA's argument that Lloyds was equitably estopped from denying coverage due to its course of conduct in receiving and defending the claims. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **reverses** the judgment of the district court.

## II. Background

### A. Policy

Lloyds provided to BYA a "Broker/Dealer and Registered Representatives Professional Liability Policy" (the "Policy") for the period spanning December 1, 2006 to December 1, 2007. The Policy is a claims made and reported policy,

which affords coverage for claims first made against BYA and reported to Lloyds during the policy period:

> The Insurer shall pay, on behalf of an Insured, Damages which the Insured becomes legally obligated to pay because of a Claim that is both made against the Insured and reported to the Insurer in writing during the Policy Period . . . for a Wrongful Act committed solely in the rendering or failing to render Professional Services for a Client . . . .

The Policy also provides that Lloyds has a "duty to defend any civil litigations or arbitrations against the Insureds that are covered by" the Policy. It includes a $50,000 retention for Broker/Dealer insureds which provides that BYA must "pay Damages and Defense Expenses up to the amount of the applicable Retention . . . for each claim made against" it. Lloyds must "pay all Damages and Defense Expenses incurred in each Claim that exceed the Retention." The Policy defines a "Claim" as "a written demand received by any Insureds for Damages (including pleadings received in a civil litigation or arbitration) for an actual or alleged Wrongful Act." A "Wrongful Act" is defined as "a negligent Act or omission . . . committed by an Insured in the rendering of Professional Services." The Policy also includes a provision addressing "Interrelated Wrongful Acts" which provides:

> All Claims based upon or arising out of the same Wrongful Act or Interrelated Wrongful Acts shall be considered a single Claim and each such single Claim shall be deemed to have been made on the earlier of the following:

A. when the earliest Claim arising out of such Wrongful Act or Interrelated Wrongful Acts was first made; or

B. when notice was provided to the Insurer . . . concerning a Wrongful Act giving rise to such Claim.

Interrelated Wrongful Acts are defined as follows:

Interrelated Wrongful Acts means any Wrongful Acts that are:

1. similar, repeated or continuous; or

2. connected by reason of any common fact, circumstance, situation, transaction, casualty, event, decision or policy or one or more series of facts, circumstances, situations, transactions, casualties, events, decisions or policies.

The exclusions section of the Policy also addresses coverage for Interrelated

Wrongful Acts (the "Prior Notice Exclusion"):

This Policy shall not apply to and the Insurer shall pay neither Damages nor Defense Expenses for any Claim:

. . . .

D. arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving:
. . . .

2. a. any Wrongful Act alleged in any Claim which has been reported, or any circumstance of which notice has been given, prior to the Policy Period under any other policy; or

b. any other Wrongful Act whenever occurring, which together with a Wrongful Act which has been the subject of such claim or notice, would constitute Interrelated Wrongful Acts

-4-

The Policy therefore contains two provisions indicating Lloyds is not responsible for indemnifying or defending BYA for claims made during the policy period which are interrelated with claims made prior to the policy period.[1]

B.    Arbitrations

1.    The Wahl Arbitration

In May 2007, Paul and Marie Wahl, residents of northeastern Ohio, served upon BYA a Statement of Claim filed with the National Association of Securities Dealers, Inc. Department of Arbitration.[2]  The Wahls received financial advice from B&G Financial Network, Inc., a corporation which provided financial and estate planning services and sold securities such as variable annuities and variable life insurance policies.  BYA acted as the broker-dealer through which B&G sold several of its investment products.  The complaint alleged the Wahls were sold unsuitable investment products and B&G financial advisors engaged in the

---

[1]BYA argues Lloyds did not rely on the Prior Notice Exclusion as a basis for denying coverage before the district court, and, therefore, cannot now rely on the clause before this court. *Schwartz v. Booker*, 702 F.3d 573, 585 (10th Cir. 2012) (noting this court will not consider arguments raised for the first time on appeal). We need not resolve this argument because either the insuring clause or the Prior Notice Exclusion are sufficient to establish noncoverage in the event the claims at issue in this action relate back to claims arising prior to the policy period. *See supra* Part III.A.2.

[2]NASD was succeeded by the Financial Industry Regulatory Authority, Inc., in 2007. *NASD and NYSE Member Regulation Combine to Form the Financial Industry Regulatory Authority - FINRA* (July 30, 2007), http://www.finra.org/Newsroom/NewsReleases/2007/p036329 (last visited April 11, 2013).

frequent replacement of annuities and other investment products to generate commissions for themselves to the detriment of the Wahls, a practice referred to as "flipping" or "churning." The complaint also named as individual respondents Frederick Brandt, Kevin Farrar, Daniel Gergel, Michael Snyder, Sr., and Michael Snyder, Jr. BYA's liability was predicated on various theories of agency liability and failure to supervise. The allegations in the complaint spanned the time period from 1999 to 2005.

Approximately two months later, in July 2007, the Wahls amended their complaint to add an additional twenty-five claimants, also from northeastern Ohio, who similarly alleged respondents had sold them unsuitable investment products and had engaged in the flipping and churning of annuities. BYA's liability was again predicated on vicarious liability and failure-to-supervise theories. The Amended Statement of Claim also named two additional respondents: Bruce Baxter and Fred Balser, Jr. It justified the styling of the complaint as a multi-party proceeding by citing NASD Rule 12312(a), which provides:

> One or more parties may join multiple claims together in the same arbitration if the claims contain common questions of law or fact and:
>
> - The claims assert any right to relief jointly and severally; or
>
> - The claims arise out of the same transaction or occurrence, or series of transactions or occurrences.

The Amended Statement did not assert any right to relief jointly and severally. Rather, it asserted NASD Rule 12312(a) justified the joinder of multiple claimants because, *inter alia*: all claimants were former customers of B&G Financial, virtually all were targeted because they were at or nearing retirement age, all were sold unsuitable investment products and frequently encouraged to replace those products in order to generate commissions for respondents, all were subject to the same or similar misrepresentations, the majority of the claimants interacted with either Baxter or Balser, and all of the relevant transactions occurred during the same six-year span. Additionally, the Amended Statement asserted, "B&G Financial employed a business model in which all of its representatives worked together as a team with respect to each customer—*i.e.*, all B&G agent/brokers shared equal responsibility for servicing each Claimant's investment needs and a Claimant might meet with one or *all* of the individual Respondents." The Amended Statement also alleged that joinder of multiple claimants and claims was necessary for it to be practicable for each claimant to seek a remedy because of the relatively small size of the individual damage claims.

During the course of the proceedings in the Wahl arbitration, BYA filed a motion to sever the claims into separate arbitrations. The motion asserted the claims did not involve common questions of law and fact and the action involved claims from twenty different groups of investors purchasing at least thirty

different types of investment products from at least fourteen separate issuers. Claimants responded to the motion, in part, by referring back to the Amended Statement's allegation that B&G utilized a team approach, in which all representatives shared joint responsibility for each customer and account. The arbitration panel denied the motion to sever without prejudice.

2.     The Knotts Arbitration

On September 22, 2005, Michael P. Knotts commenced a lawsuit in the Court of Common Pleas for Summit County, Ohio, styled *Michael P. Knotts v. B&G Financial Network, Inc., et al.* The allegations which formed the basis of Knotts' state court lawsuit formed the basis for a complaint before the NASD Department of Arbitration approximately fifteen months later. On December 19, 2006, NASD Dispute Resolution notified BYA that it had been named as a respondent in an arbitration proceeding brought by Knotts, styled *Michael P. Knotts v. Brecek & Young Advisors, Inc., et al.* The Knotts Arbitration named as respondents BYA, B&G Financial Network, Daniel Gergel, and Michael Snyder, Jr. Knotts alleged the respondents fraudulently induced him to retire early to obtain a lump sum settlement from his 401(k) plan, sold him unsuitable investment products, churned his accounts, and failed to properly advise him as to the effect the September 11, 2001 terrorist attacks would have on his financial portfolio. Knotts alleged BYA was vicariously liable for the actions of the other respondents and that it failed to appropriately supervise the other respondents.

-8-

### 3. The Colaner Arbitration

On June 13, 2006, attorneys for Pauline and Donald Colaner served notice on BYA of their intent to bring a NASD arbitration proceeding against it. The action named as claimants Pauline Colaner, Donald Colaner, The Donald R. Colaner & Pauline F. Colaner Charitable Remainder Trust, and the Donald R. Colaner Family Trust. Named respondents included BYA, B&G Financial Network, Michael Snyder, Kevin Farrar, Frederick Brandt, and Daniel Gergel. The Colaners alleged the respondents engaged in the churning of variable annuities, provided unsuitable investment advice, and made fraudulent misrepresentations regarding their investments. They further asserted BYA was liable for negligently failing to supervise the other respondents in their dealings with the Colaners.

### C. Coverage

After BYA timely provided notice to Lloyds of the Wahl Arbitration, Lloyds agreed to defend BYA subject to a reservation of rights. By letter dated October 29, 2007, Lloyds notified BYA that it had tendered the Wahl Arbitration to BYA's prior insurance carrier, Fireman's Fund, to determine whether it was interrelated to the Colaner Arbitration. By email sent November 20, 2007, Lloyds notified BYA that coverage counsel for both Lloyds and Fireman's Fund had determined the Colaner claims were not interrelated with the Wahl claims. In another letter dated December 12, 2007, regarding the then-pending motion to

sever in the Wahl Arbitration, Lloyds notified BYA that it considered each of the twenty-six individual Wahl claimants to be distinct from the others and therefore subject to a separate $50,000 retention. The letter stated Lloyds would "consider all claims based upon or arising out of the same Wrongful Act or Interrelated Wrongful Acts as one claim." Lloyds, however, took the position that "the [Wahl] claimants are entirely unrelated except for the fact that they have retained the same attorney to bring their claims."

BYA responded by letter dated October 20, 2008, stating it disagreed with Lloyds' analysis of the Wahl claims and, under the Policy's definition of Interrelated Wrongful Acts, the entire Wahl Arbitration should only be subject to one $50,000 retention because the individual claims were all causally related and arose out of a common event. BYA settled with each of the claimants in the Wahl Arbitration in March 2009. Lloyds prorated the defense costs among all claims and paid indemnity on those claims which exceeded the $50,000 retention. In total, BYA incurred and paid approximately $932,000 in defense and settlement of the Wahl Arbitration, while Lloyds paid approximately $385,000.

D.     District Court Proceedings

Following the allocation of defense and settlement costs, BYA sued Lloyds in the District of Kansas, seeking declaratory relief and damages for Lloyds' failure to defend and indemnify it for amounts above a single $50,000 retention. The parties filed cross-motions for summary judgment setting forth their positions

on the interpretation of the Policy's $50,000 retention clause. Specifically, the parties disputed whether the twenty-six Wahl claims constituted interrelated wrongful acts under the Policy. BYA argued the claims were logically interrelated by a common factual nexus. Lloyds argued there was not a sufficient factual nexus between the claims, emphasizing differences in the investors, investment products, issuers, representatives, and recoveries sought in each claim. The district court agreed with BYA's position and rejected the position advocated by Lloyds. It therefore granted summary judgment in favor of BYA. In a footnote in its first motion for summary judgment, however, Lloyds suggested an alternative position. Lloyds argued that if each of the Wahl claims were found to have arisen from interrelated wrongful acts, then all of the Wahl claims would relate back to claims made in the Knotts and/or Colaner Arbitrations. Because the Knotts and Colaner Arbitrations occurred outside of the Policy Period, Lloyds argued, no coverage for any of the claims would exist. Over BYA's objection, the district court granted Lloyds leave to submit supplemental briefing on its new relation-back defense.

Consistent with the district court's order, Lloyds filed a second motion for summary judgment which fully set forth the bases for its relation-back defense. In this motion, Lloyds asserted the Policy did not cover *any* of the Wahl claims and requested the district court order BYA to *reimburse* it for all sums paid in indemnity and defense of the Wahl Arbitration. In response, BYA argued Lloyds

-11-

was barred from raising the relation-back defense under the doctrines of waiver and/or estoppel and that, in the alternative, the Knotts and Colaner Arbitrations were sufficiently factually distinguishable from the Wahl Arbitration that they could not be deemed a single claim. The district court denied Lloyds' second summary judgment motion. The court rejected BYA's waiver and estoppel arguments, but concluded the Wahl, Knotts, and Colaner Arbitrations could not be considered interrelated wrongful acts so as to constitute a single claim under the Policy. The district court then entered judgment for BYA in the amount of $1,155,541.73, inclusive of prejudgment interest.

Before this court, Lloyds no longer advances the position it took in its first summary judgment motion that the twenty-six Wahl claims were not interrelated and therefore were subject to separate $50,000 retentions. Instead, Lloyds confines its argument to the position it took in its second motion for summary judgment: because the Wahl claims relate back to the Knotts and Colaner claims, they are wholly outside the Policy coverage.

## III.  Discussion

### A.  Relation-Back Defense

#### 1.  Standard of Review

This court reviews the district court's summary judgment decision de novo, applying the same standard as the district court. *Storey v. Taylor*, 696 F.3d 987, 992 (10th Cir. 2012). Summary judgment is appropriately granted "if the movant

-12-

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court views the evidence and draws reasonable inferences in the light most favorable to the nonmoving party. *Storey*, 696 F.3d at 992. The parties agree that New York law applies to the resolution of the disputed claims. Summary judgment is appropriate when the words of a contract convey a definite and precise meaning without ambiguity. *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992). Under New York law, an insurer bears the burden to establish a claim falls within the scope of a policy exclusion. *Village of Sylvan Beach v. Travelers Indem. Co.,* 55 F.3d 114, 115 (2d Cir. 1995). To negate coverage, exclusions must be stated in clear and unmistakable language, subject to no other reasonable interpretation, and applicable in the particular case. *Id.*

2.     Sufficient Factual Nexus

The parties agree that none of the pertinent policy provisions are ambiguous. The parties further agree that whether the Wahl, Knotts, and/or Colaner Arbitrations constitute interrelated wrongful acts under the Policy depends upon whether there exists a sufficient factual nexus between the Wahl claims and the claims asserted in the Knotts and/or Colaner Arbitrations.[3] The

---

[3]The so-called "sufficient factual nexus test" has been used by other courts applying New York law to interpret similar "interrelated wrongful acts" provisions in other insurance contracts. *See, e.g.*, *Seneca Ins. Co. v. Kemper Ins.*

(continued...)

parties disagree, however, whether the Wahl, Knotts, and Colaner Arbitrations share a sufficient factual nexus.

Under the express terms of the Policy, wrongful acts are interrelated if they are "connected by reason of *any* common fact, circumstance, situation, transaction, casualty, event, decision or policy or one or more series of facts, circumstances, situations, transactions, casualties, events, decisions or policies." (emphasis added). Several common facts connect the Wahl, Knotts, and Colaner Arbitrations. All named as respondents BYA, B&G Financial Network, Gergel, and Snyder. Further, both the Wahl and Colaner arbitrations included claims against broker/agents Brandt and Farrar. All of the misconduct was alleged to have taken place during roughly the same time period—from the late 1990s to the mid 2000s. All claims allege the respondents sold unsuitable investment products including various types of annuities. Further, all claims involved allegations of churning or flipping of investment accounts in order to enrich the broker/agents at the expense of account holders. Finally, BYA's liability was predicated on theories of vicarious liability and failure to supervise its broker/agents in each of the claims.

The district court concluded these commonalities were insufficient to establish a sufficient factual nexus:

_____

[3](...continued)
*Co.*, 133 F. App'x 770, 772 (2d Cir. 2005) (unpublished).

Certainly, there is some overlap of the allegations and respondents. As BYA points out, however, one of the factors the Court focused on in determining the twenty-six Wahl claims are interrelated wrongful acts is that each claimant alleged that they were damaged during the same claims-made policy period by the same individual broker/agents in the same office, under an alleged business model in which all of its representatives worked together as a team with respect to each customer—that is, a common scheme or plan underlying the alleged "churning" and "flipping" of the accounts. By contrast, the Knotts and Colaner Arbitrations do not allege that the same individual respondents acted as a team or that there was any common scheme or plan. While Lloyds attempts to minimize this distinction, the Court finds it significant; otherwise, *any* claim involving the sale of unsuitable securities involving fraud, misrepresentation or failure to supervise that arose prior to the Lloyds' Policy Period would be deemed interrelated. As noted when Lloyds accepted the Wahl Arbitration claim, there was nothing in the other Arbitrations to suggest to BYA that there were potential claims beyond those individual claims, that is, a scheme or pattern of wrongful acts. While the definition of Interrelated Wrongful Acts is broad, "a court must strictly and narrowly construe such provisions."

Mem. Op. & Order at 16–17 (quoting *Home Ins. Co. of Ill. v. Spectrum Info. Tech., Inc.*, 930 F. Supp. 825, 848 (E.D.N.Y. 1996)). On appeal, BYA stresses these rationales and further argues that determining whether a sufficient factual nexus exists requires "subtle, qualitative judgments" as to the nature of the related claims.

The emphasis placed by the district court and BYA on the "team" allegation to differentiate the Wahl Arbitration from the Knotts and Colaner Arbitrations is misplaced. As an initial matter, BYA overstates the significance of the allegation in the Wahl Arbitration. As the Amended Statement of Claim makes clear, the allegation justified bringing the proceeding on behalf of multiple

-15-

claimants against a group of respondents. No claims in the Wahl Arbitration assert a right to relief jointly and severally, nor does the allegation form the basis of a separate cause of action for any of the Wahl claimants. Indeed, nothing in the record indicates that, had they not brought their claims earlier, the Knotts or Colaner claimants could not have joined the Wahl Arbitration.

The additional rationale given by the district court for its conclusion that the Wahl claims do not relate back to the Knotts and Colaner claims is similarly unavailing. The district court relied on *Home Insurance Company* for the proposition that "interrelated wrongful acts" provisions in insurance policies must be strictly and narrowly construed. In *Home Insurance Company,* however, the policy at issue did not define the term "Interrelated Wrongful Acts." *See* 930 F. Supp. at 847–48. Here, by contrast, not only is the term defined, but the parties agree the definition in the Policy is unambiguous. BYA has not argued the plain language of the Policy should be disregarded for equitable or public policy reasons.[4] There is therefore no justification for reading the term "Interrelated Wrongful Acts" narrowly at the expense of applying its plain language.

--------

[4]BYA does argue that none of the allegations in the Knotts or Colaner Arbitrations would have put it on notice of the possibility that similar allegations would be made in the Wahl Arbitration. Assuming arguendo the validity of this argument, in light of the Policy's broad definition of the term "Interrelated Wrongful Acts," it is insufficient to refute the existence of a sufficient factual nexus between the claims.

Because, applying the plain language of the Policy, the Wahl, Knotts, and Colaner Arbitrations were connected by common facts, circumstances, decisions, and policies, the district court erred in concluding the claims asserted in the Wahl Arbitration did not arise from wrongful acts interrelated to the wrongful acts committed outside the Lloyds policy period.

B.      Waiver and Estoppel

1.      Jurisdiction and Standard of Review

Under New York law, the doctrines of waiver and estoppel may operate to prevent an insurer from denying coverage notwithstanding the terms of the policy. *See Albert J. Schiff Assocs., Inc. v. Flack*, 417 N.E.2d 84, 87 (N.Y. 1980). BYA argues that, regardless of the how the Policy is interpreted, Lloyds is precluded from denying coverage due to the actions it took in the course of receiving the Wahl claim. Specifically, BYA argues Lloyds has either waived its right to assert the relation-back defense or should be estopped from denying coverage under New York law. This court reviews the district court's exercise of its equitable powers for abuse of discretion. *Clark v. State Farm Mut. Auto. Ins. Co.*, 433 F.3d 703, 709 (10th Cir. 2005). A district court abuses its discretion when its judgment is arbitrary, capricious, whimsical, or manifestly unreasonable. *Id.* at 712. This court will not disturb a district court's exercise of its discretion absent a definite and firm conviction the district court has made a clear error in judgment or exceeded the bounds of permissible choice under the circumstances. *Id.*

-17-

As a threshold matter, Lloyds argues BYA is precluded from raising its waiver or estoppel arguments because it did not take a cross appeal. This argument lacks merit. "[A]n appellee is generally permitted to defend the judgment won below on any ground supported by the record without filing a cross appeal." *Wyoming v. U.S. Dep't of Agric.*, 661 F.3d 1209, 1254 n.33 (10th Cir. 2011) (quotations omitted). BYA prevailed fully on all of its claims before the district court. It therefore "may, without filing a cross-appeal, urge in support of a decree any matter appearing in the record, although [its] argument may involve an attack upon the reasoning of the lower court." *Ute Distrib. Corp. v. Sec'y of Interior*, 584 F.3d 1275, 1282 (10th Cir. 2009) (quotations omitted).

2.  Waiver

BYA's waiver argument is unpersuasive. New York law distinguishes policy defenses, such as failure of the insured to give timely notice to the insurer, from coverage defenses, such as those defenses based on an insuring clause or exclusions. The former may be waived, whereas the latter may not. *Schiff*, 417 N.E.2d at 87 ("[W]here the issue is the existence or nonexistence of coverage . . . the doctrine of waiver is simply inapplicable."). Here, the underlying dispute concerns whether the Policy provides coverage for the claims raised in the Wahl Arbitration. The doctrine of waiver is therefore inapplicable.

3.      Estoppel

Under New York law "[w]here an insurer defends an action on behalf of an insured, with knowledge of a defense to the coverage of the policy, it thereafter is estopped from asserting that the policy does not cover the claim." *Hartford Ins. Group v. Mello*, 437 N.Y.S.2d 433, 434 (2d Dep't 1981). Further, contrary to Lloyds' position on appeal, unlike waiver, the doctrine of estoppel is not rendered inapplicable simply because coverage is at issue. New York law specifically distinguishes waiver from estoppel on that very basis:

> Distinguished from waiver . . . is the intervention of principles of equitable estoppel, in an appropriate case, such as where an insurer, though in fact not obligated to provide coverage, without asserting policy defenses or reserving the privilege to do so, undertakes the defense of the case, in reliance on which the insured suffers the detriment of losing the right to control its own defense. In such circumstances, *though coverage as such does not exist, the insurer will not be heard to say so.*

*Schiff*, 417 N.E.2d at 87 (emphasis added).[5]

_____

[5]Lloyds' reliance on *Sena v. Nationwide Mutual Fire Insurance Co.*, 637 N.Y.S.2d 485, 486–87 (2d Dep't 1996) and *Neil Plumbing & Heating Construction Corp. v. Providence Washington Insurance Co.*, 508 N.Y.S.2d 580, 582 (2d Dep't 1986), does not alter this conclusion. These authorities, each from the Appellate Division of the New York Supreme Court, contain substantially similar language to the effect that the doctrines of waiver and estoppel may not be used "to create coverage where none exists under the policy as written." *Sena*, 637 N.Y.S.2d at 487; *Neil*, 508 N.Y.S.2d at 582. As the New York Court of Appeals has made plain in *Schiff*, however, the doctrines of waiver and estoppel are distinct; the inapplicability of one does not necessarily imply the inapplicability of the other. *See Albert J. Schiff Assocs., Inc. v. Flack*, 417 N.E.2d 84, 87 (N.Y. 1980). *Schiff* further makes clear that estoppel does not

(continued...)

-19-

The district court characterized BYA's estoppel argument as limited to the argument that Lloyds waited too long to assert its relation-back defense to coverage, and further concluded BYA failed to demonstrate sufficient prejudice, in the form of detrimental reliance, to invoke the defense:

> Here, BYA contends that, despite the numerous communications between the parties regarding whether the various arbitrations and claims were interrelated and Lloyds' acceptance of coverage under the Policy for the Wahl Arbitration, subject to its reservation of rights, Lloyds should have explained the opposite result if the Court denied its position that the claims were not interrelated. Although it did not articulate its alternative single claim/relation back defense until the Pretrial Order, Lloyds did reserve its right to assert certain policy defenses and that the claims asserted against BYA were not covered under the Policy. Moreover, BYA cannot demonstrate that it detrimentally relied on Lloyds' conduct. Delay in disclaiming coverage fails to establish prejudice. BYA does not assert that the conduct of its defense of the Wahl Arbitration claim, in terms of its character and strategy, was prejudiced.

Mem. Op. & Order at 15 (citations omitted). The court therefore concluded Lloyds was not equitably estopped from raising the relation back defense.

Before this court, BYA points to several facts in the record pertinent to its estoppel claim. BYA notes Lloyds was aware of the Knotts claims at least as early as March 14, 2007, when it denied coverage for that claim on the basis it

---

[5](...continued)
operate to "create coverage where none exists," but rather to preclude an insurer from belatedly disclaiming coverage when its representations and actions materially prejudice its insured. *Id.* To the extent Lloyds relies on *Sena* and *Neil* as authority contrary to *Schiff*, this court is bound to follow the latter because it comes from New York's highest court. *See Commonwealth Prop. Advocates, LLC v. Mortgage Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1204 (10th Cir. 2011).

was made prior to the Policy period.  Lloyds was similarly aware of the Colaner proceedings at least as early as October 29, 2007, when it tendered the Wahl Arbitration to Fireman's Fund to determine whether the Wahl Arbitration was interrelated with the Colaner Arbitration.  On November 20, 2007, Lloyds notified BYA that coverage counsel for Lloyds and coverage counsel for Fireman's Fund had concluded the Colaner and Wahl Arbitrations were not interrelated.  Lloyds proceeded to appoint counsel and defend the Wahl Arbitration pursuant to its reservation of rights.  While the parties continued to dispute whether the Wahl claims would be subject to a single retention or twenty-six separate retentions, Lloyds' appointed counsel entered into Settlement Agreements with each of the claimants in the Wahl Arbitration.  Of the approximately $1.3 million paid in defense and settlement of the Wahl claims, BYA paid approximately $930,000 and Lloyds paid approximately $385,000.  Of the sum paid by Lloyds, at least $70,000 constituted indemnification, as BYA's total defense costs were approximately $312,000.  Lloyds did not assert its relation-back defense in its answer to BYA's complaint, nor did it assert any counterclaims or set-off for amounts it had already paid in connection with the Wahl Arbitration.  In the pretrial order completed after discovery, Lloyds took the position that the Wahl claims were not covered by the Policy, but did not assert any claim for damages. Lloyds' first claim for damages was not made until its second motion for summary judgment, filed on April 27, 2011, more than three years after it notified

BYA that the Wahl and Colaner claims were not interrelated. Thus, BYA argues, for three years Lloyds consistently acted as though the Wahl claims were covered under the Policy, subject only to a dispute as to the amount of applicable retentions. Lloyds reversed its position and attempted to disclaim coverage altogether eighteen months after paying the Wahl settlement, relying on facts and claims of which it had been aware since 2007.

Against this factual backdrop, the conclusion of the district court that BYA could not make an adequate showing of prejudice amounts to an abuse of discretion. BYA has identified facts in the record which support the conclusion that Lloyds controlled the defense of the Wahl Arbitration throughout its entirety to its termination and contributed to the settlement. Such a showing is more than adequate to establish prejudice under New York law. "Prejudice is established only where the insurer's control of the defense is such that the character and strategy of the lawsuit can no longer be altered." *Federated Dep't Stores, Inc. v. Twin City Fire Ins. Co.*, 807 N.Y.S.2d 62, 68 (1st Dep't 2006); *see also Nat'l Cas. Co. v. State Ins. Fund*, 641 N.Y.S.2d 665, 668 (1st Dep't 1996) ("National defended John's in the underlying action and paid $300,000 to settle the claim on John's behalf. Thus, National covered this claim on John's behalf and is now equitably estopped from denying coverage.")[6] Here, it is axiomatic that the

---

[6]There is conflicting authority as to whether prejudice is ever presumed for

(continued...)

character and strategy of the Wahl Arbitration can no longer be altered because it was settled. Courts have found prejudice for purposes of estoppel in circumstances in which the insurer's control of the insured's defense has been significantly less extensive. *See, e.g., Bluestein & Sander v. Chicago Ins. Co.*, 276 F.3d 119, 123 (2d Cir. 2002) (concluding prejudice established when insurer controlled defense "almost to the close of discovery"); *Boston Old Colony Ins. Co. v. Lumbermens Mut. Cas. Co.*, 889 F.2d 1245, 1248 (2d Cir. 1989) ("Even if Lumbermans had disclaimed liability ten months earlier, on the morning of trial, the disclaimer would still have been prejudicial . . . because the Bodians had already taken actions that could not be undone."). Under the district court's interpretation of New York law, it is difficult to conceive how any insured could ever establish a valid claim for estoppel. We therefore conclude the district

---

[6](...continued)
purposes of an estoppel claim under New York law. *Compare Bluestein & Sander v. Chicago Ins. Co.*, 276 F.3d 119, 122–23 (2d Cir. 2002) (stating prejudice is presumed when insurer takes control of defense without reserving rights to assert policy defenses and insured detrimentally relies on insurer) *with Federated Dep't Stores, Inc. v. Twin City Fire Ins. Co.*, 807 N.Y.S.2d 62, 68 (1st Dep't 2006) (rejecting *Bluestein* and concluding prejudice is not "uniformly presumed" when the insurer controls the defense in the underlying action); *see also Touchette Corp. v. Merchs. Mut. Ins. Co.*, 429 N.Y.S.2d 952, 955 (4th Dep't 1980) ("Prejudice to the insured must be established, but proof of prejudice may be implied where the insurer has complete control of the defense."). We need not resolve this issue here, however, because we conclude BYA has made an adequate showing of prejudice regardless of whether a presumption operates.

court's determination that BYA failed to establish prejudice is manifestly

unreasonable and amounts to a clear error of judgment. *Clark*, 433 F.3d at 712.[7]

Although the district court erred in concluding the defense of equitable

estoppel was unavailable to BYA, it does not necessarily follow that BYA is

entitled to recover the same damages awarded by the district court on the

(erroneous) basis that the Wahl claims did not relate back to the Knotts and

Colaner claims. Certainly, BYA has established prejudice as to Lloyds' attempt

to recoup the approximately $385,000 it has already paid—at the time BYA

settled the Wahl Arbitration Lloyds had expressly promised to provide coverage

up to that amount.[8] In determining whether BYA is entitled to any additional

---

[7]Lloyds' reservation of rights letters to BYA do not alter our analysis. Under New York law, "[t]he purpose of a reservation of rights is to prevent an insured's detrimental reliance on the defense provided by the insurer. The reservation is a sufficient preventative to reliance even if the insurer later disclaims on a basis different from the ground originally asserted in the reservation of rights." *Federated Dep't Stores*, 807 N.Y.S.2d at 67. Here, however, Lloyds omitted any reference to its relation back defense in its reservation of rights letters. In fact, the only mention of the Policy's Interrelated Wrongful Acts provision in Lloyds' correspondence occurred in a letter in which Lloyds asserts that the individual Wahl claims are unrelated to each other. This position, which Lloyds maintained throughout the Wahl Arbitration and much of the present action, is fundamentally incompatible with its later position that those claims are interrelated with claims asserted in earlier arbitrations. Further, as to the Colaner claims, Lloyds went so far as to notify BYA that it had conferred with its prior carrier and concluded the claims were not interrelated.

[8]BYA makes passing reference to an additional obstacle to Lloyds' assertion it is entitled to reimbursement for the amounts already paid in Wahl: under New York law, "an insurer cannot be a subrogee against its insured on the very claim for which the insured was covered." *Jefferson Ins. Co. of N.Y. v.*

(continued...)

-24-

recovery, however, the district court must consider the extent to which BYA detrimentally relied on Lloyds' representations, if at all. Thus, the court must consider whether Lloyds' erroneous representation that the twenty-six Wahl claims were not interrelated under the Policy negates any additional claim of detrimental reliance on the part of BYA.

## IV.    Conclusion

For the foregoing reasons, the judgment of the district court is **reversed** and the matter is **remanded** for further proceedings not inconsistent with this opinion.

---

[8](...continued)
*Travelers Indem. Co.*, 703 N.E.2d 1221, 1227 (N.Y. 1998). The district court did not pass on this argument below, and our disposition of BYA's estoppel claim makes it unnecessary to consider it.