**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MICHAEL EARL MCCUNE,

    Petitioner,

v.

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

    Respondent.

No. 16-9527
(Admin. Proc. File No. 3-16768)
(Securities & Exchange Commission)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **PHILLIPS** and **McHUGH**, Circuit Judges.
_____

Michael McCune, proceeding pro se, petitions for review of an order of the

Securities and Exchange Commission (SEC) upholding the disciplinary action taken

by the Financial Industry Regulatory Authority (FINRA). FINRA imposed a fine of

$5000, assessed hearing costs of $1522.94, and suspended him for six months from

all capacities in the securities industry for failing to follow the rules requiring

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

disclosure of his personal bankruptcy filings and tax liens. We exercise jurisdiction under 15 U.S.C. § 78y(a)(1), and affirm.

## I.    Background

From December 1996 until May 2011, McCune was associated as a registered representative with Royal Alliance Associates, Inc. (Royal Alliance), a FINRA member firm. FINRA is "a quasi-governmental agency responsible for overseeing the securities brokerage industry." *ACAP Fin., Inc. v. U.S. SEC*, 783 F.3d 763, 765 (10th Cir. 2015). FINRA succeeded the National Association of Securities Dealers (NASD) in 2007. *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003*, 715 F.3d 1231, 1234 n.2 (10th Cir. 2013). McCune's alleged violations occurred between 2005 and 2011, so FINRA applied the relevant NASD and FINRA rules. Because the applicable FINRA rules are not substantially different from the corresponding NASD rules, and because McCune does not argue for application of one set over the other, we refer only to the FINRA rules.

FINRA charged McCune with violating FINRA Rules 1122 and 2010,[1] alleging he willfully failed to timely amend his Uniform Application for Securities Industry Registration or Transfer (Form U4). Rule 2010 requires a member to "observe high standards of commercial honor and just and equitable principles of trade." *See*

---

[1] FINRA Rule 1122 replaced NASD Interpretive Material 1000-1. *See* Order Approving Proposed Rule Change to Adopt FINRA Rule 1122, 74 Fed. Reg. 18767-01, 2009 WL 1096425 (April 24, 2009). FINRA Rule 2010 replaced NASD Rule 2110. *See* Order Approving Proposed Rule Change to Adopt FINRA Rule 2010, 73 Fed. Reg. 57174-01, 2008 WL 4410589 (Oct. 1, 2008).

http://finra.complinet.com/en/display/display.html?rbid=2403&record_id=6905&element_id=5504&highlight=2010#r6905 (last visited Dec. 1, 2016).  Rule 1122 prohibits a member or associate from filing "with FINRA information with respect to membership or registration which is incomplete or inaccurate so as to be misleading, or which could in any way tend to mislead, or fail to correct such filing after notice thereof."  *See*

http://finra.complinet.com/en/display/display.html?rbid=2403&record_id=11434&element_id=8336&highlight=1122#r11434 (last visited Dec. 1, 2016).

McCune filed for bankruptcy in February 1989, but did not amend his Form U4 to reflect the bankruptcy until he joined Royal Alliance in December 1996.  At that time, the Form U4 McCune signed included a declaration that he would update his Form U4 to disclose any changes in the previously reported information.  The SEC did not charge as a violation this failure to timely disclose his 1989 bankruptcy, but relied on it as evidence of McCune's knowledge of his disclosure obligations.

McCune filed a second voluntary bankruptcy petition in October 2002.  While the petition was pending, he signed an amendment to his Form U4 on October 23, 2003, responding "no" to the question whether he had filed a bankruptcy petition within the past ten years.  McCune filed a third voluntary bankruptcy petition in May 2005.  He failed to amend his Form U4 to disclose this bankruptcy until April 7, 2011.

The Internal Revenue Service filed three tax liens totaling $160,500 against McCune in March 2009, May 2010, and March 2011. The State of Kansas filed a state tax lien against him in March 2009 for $1872. He failed to amend his Form U4 to disclose these liens until April 7, 2011.

The Royal Alliance Sales Practices Manual provides that any change in the information on a Form U4 requires filing an amended Form U4 and that failure to do so can result in severe sanctions. The manual further instructs registered representatives to review their Form U4 at least annually to ensure its accuracy. In addition, Royal Alliance requires its registered representatives to complete an annual compliance questionnaire, which includes reminders to update the Form U4 and to provide information about various events, such as bankruptcy filings and liens. McCune stated that he had completed the required questionnaires during his employment with Royal Alliance.

Royal Alliance discovered McCune's failures to update his Form U4 while preparing for an audit. When McCune's supervisor brought the omissions to his attention, McCune signed an amended Form U4, which disclosed the bankruptcies and tax liens, on April 7, 2011. He was permitted to resign in May 2011. In early 2013 FINRA instituted the underlying disciplinary proceedings.

McCune concedes that he did not timely update his Form U4. He argues, however, that FINRA failed to establish that his failure to do so was willful and that mitigating circumstances should have reduced or eliminated the sanctions. In

addition, he contends that the sanctions were so excessive that they violated the Constitution.

## II.     Standards of Review

We review the SEC's sanctions for an abuse of discretion. *Rooms v. SEC*, 444 F.3d 1208, 1212 (10th Cir. 2006). We will not set aside the SEC's sanctions decision unless "it is beyond the law, it is unsupported factually, or it completely lacks reasonableness such that it is an abuse of the SEC's discretion." *Id.* We will uphold the SEC's factual findings "if they are supported by substantial evidence. Substantial evidence is a minimum quantity of relevant evidence objectively adequate to support the findings when viewed in light of the record as a whole." *Id.* (citation and internal quotation marks omitted). We will not overturn the SEC's findings where "the evidence is capable of rational interpretation that would favor either side." *Id.* (internal quotation marks omitted). We review de novo the SEC's legal determinations. *Id.*

We have liberally construed McCune's pro se filings. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). We do not, however, "take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id.* Moreover, "pro se parties [must] follow the same rules of procedure that govern other litigants." *Id.* (internal quotation marks omitted).

## III.     Analysis

McCune makes no appellate argument challenging the imposition of the $5000 fine and the hearing costs of $1522.94. Therefore, these issues are waived.

*See Specialty Beverages, L.L.C. v. Pabst Brewing Co.*, 537 F.3d 1165, 1179 n.10 (10th Cir. 2008) (holding party waived argument "by failing to raise the argument to this court").

McCune challenges the SEC's finding that his failure to update his Form U4 was willful. He argues FINRA was required to prove he acted with scienter or that he was aware he was violating the law. He admits his conduct was "extremely negligent," Aplt. Opening Br. at 2, and asserts he was otherwise occupied by concerns about the declining stock markets. He further states that Royal Alliance's Sales Practices Manual containing the provision requiring registered representatives to review and update their Form U4 was buried in hundreds of pages that he barely read.

FINRA and the SEC determined McCune was subject to statutory disqualification because he had willfully made false or misleading statements in his Forms U4. *See* 15 U.S.C. §§ 78c(a)(39)(F), 78o(b)(4)(A) (stating that statutory disqualification applies to false or misleading statements willfully made or material facts willfully omitted in required reports). The SEC held that a "willful violation of the securities laws means intentionally committing the act which constitutes the violation." Admin R. at 873 (internal quotation marks omitted). This court has held the term "willfully" in the SEC sanctions context "to mean merely intentionally committing the act which constitutes the violation. There is no requirement that the actor also be aware that he is violating one of the Rules or Acts." *Decker v. SEC*, 631 F.2d 1380, 1386 (10th Cir. 1980) (internal quotation marks omitted); *accord*

*Mathis v. U.S. SEC*, 671 F.3d 210, 217 (2d Cir. 2012); *Wonsover v. SEC*, 205 F.3d 408, 414 (D.C. Cir. 2000).

McCune argues that FINRA was required to prove he acted with knowledge that his conduct was unlawful. He relies on *Ratzlaf v. United States*, 510 U.S. 135 (1994), a criminal case, where the Court held, "[t]o establish that a defendant 'willfully violated' the antistructuring law, the Government must prove that the defendant acted with knowledge that his conduct was unlawful," *id.* at 137 (brackets omitted). As *Ratzlaf* recognized, "willful" is a "word of many meanings, and its construction is often influenced by its context." 510 U.S. at 141 (alterations and internal quotation marks omitted).

Even under McCune's proffered definition, his conduct was willful. It is undisputed that he knew he was required to report any changes to his Form U4 and, further, that if he did not, he was subject to sanctions. Even if the requirement to report changes was not made obvious in Royal Alliance's Sales Practices Manual, McCune does not dispute that he annually completed a compliance questionnaire, which reminded him to update his Form U4. Thus, substantial evidence supports a finding that McCune was aware he was violating the law. The SEC did not abuse its discretion when it concluded that he willfully failed to disclose the bankruptcies and tax liens on his Form U4.

McCune argues his legitimate concerns about his clients' investments during a turbulent period in the domestic and global stock markets, as well as the prolixity of the Sales Practices Manual, should mitigate the length of his suspension. He does not

7

claim that these factors are included in the mitigating factors FINRA considers when fashioning a sanction. *See* FINRA *Sanction Guidelines* (2015), at 6-7, http://www.finra.org/sites/default/files/Sanctions_Guidelines.pdf (last visited Dec. 1, 2016).

Although the SEC "credit[ed] McCune's candor in admitting that he failed to timely amend his Form U4," Admin R. at 880, it nevertheless upheld FINRA's determination that McCune's violations were "egregious," *id.* at 879. The SEC identified "egregious cases" as including "those involving repeated failures to file, untimely filings, or false, inaccurate, or misleading filings." *Id.* The Guidelines recommend for egregious cases a suspension of up to two years or a bar. *See Sanction Guidelines*, at 70; *see also ACAP Fin., Inc.*, 783 F.3d at 767-68 (approving SEC's application of FINRA's Sanction Guidelines). McCune's six-month suspension was at the low end of the recommended sanctions. Therefore, under these circumstances, the SEC did not abuse its discretion in upholding the suspension. *See Rooms*, 444 F.3d at 1213.

Next, McCune argues the six-month suspension imposed by FINRA was so excessive that it violated the Excessive Fines Clause of the Eighth Amendment.[2] McCune cites *Rooms* as applying constitutional principles to FINRA. 444 F.3d at 1214 ("Due process requires that an NASD [or FINRA] rule give fair warning of prohibited conduct before a person may be disciplined for that conduct."). In

---

[2] McCune also asserts that his rights under the Fourteenth Amendment were violated, but he has provided no argument in support so we do not consider such a claim. *See Specialty Beverages*, 537 F.3d at 1179 n.10.

8

contrast, the SEC argues FINRA is a private, nonprofit corporation, so the discipline it imposed was not governmental action subject to the Excessive Fines Clause. *See* Aplee. Br. at 25-26; *see also Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 206 (2d Cir. 1999) (stating "NASD is a private actor, not a state actor" whose actions are not "those of the state"); *cf. Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (stating government's "[m]ere approval" [e.g., SEC's order sustaining FINRA's sanction] is not sufficient to convert private action to state action).

McCune maintains that 95% of the registered representatives who were suspended from all securities activities at the time he was suspended did not return to the securities industry. Therefore, he claims his loss of income due to his suspension totals $730,802 over the next ten years, in violation of the Excessive Fines Clause. He relies on *United States v. Bajakajian*, 524 U.S. 321, 324 (1998), which held that forfeiture of the entire $357,144 in currency the defendant attempted to carry out of the United States without complying with the reporting requirement would violate the Excessive Fines Clause.

We decline McCune's invitation to conduct an independent investigation to ascertain how many registered representatives who were suspended as a sanction never returned to work in the securities industry or why. We also reject McCune's characterization of his claimed projected loss of income as a fine. Although FINRA imposed a $5000 fine—which McCune does not challenge on appeal—it did not require him to pay an additional fine or confiscate any of his income or assets. McCune's future-lost-income claim would not be covered by the Eighth Amendment

9

because "the Excessive Fines Clause was intended to limit only those fines directly imposed by, and payable to, the government," *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 268 (1989). Therefore, we need not resolve whether constitutional mandates apply here.

## IV.    Conclusion

The SEC upheld the six-month suspension imposed by FINRA. The sanction was at the low end of the range stated in the FINRA Guidelines. We find no abuse of discretion in the SEC's decision. McCune's "admissions and behavior provide a sufficient basis for a conclusion that he did not 'observe high standards of commercial honor and just and equitable principles of trade' as [FINRA] Rule [2010] requires." *Rooms*, 444 F.3d at 1215. The SEC's decision is affirmed.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

10