Zurich Am. Ins. Co. v Giorgio Armani Corp. (2025 NY Slip Op 01335)

Zurich Am. Ins. Co. v Giorgio Armani Corp.

2025 NY Slip Op 01335

Decided on March 11, 2025

Appellate Division, First Department

SINGH, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: March 11, 2025
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Cynthia S. Kern
Anil C. Singh Lizbeth González Tanya R. Kennedy John R. Higgitt

Index No. 653891/20|Appeal No. 3273|Case No. 2024-00725|

[*1]Zurich American Insurance Company, Plaintiff-Appellant,
v
Giorgio Armani Corporation, et al., Respondent.

Plaintiff appeals from an order and judgment of Supreme Court, New York County (Margaret A. Chan, J.), entered on or about December 20, 2023, which denied its motion for summary judgment, and granted defendant Hiscox Insurance Company's cross-motion for summary judgment and declaratory relief.

Ropers Majeski PC, New York (Andrew L. Margulis of counsel), for appellant.
Hodgson Russ LLP, Buffalo (Ryan K. Cummings of counsel), for Giorgio Armani Corporation, respondent.
Surdyk & Kachoyeanos, New York (Leonard S. Surdyk of counsel), for Hiscox Insurance Company, Inc., respondent.

SINGH, J. 

Plaintiff appeals from an order and judgment of Supreme Court, New York County (Margaret A. Chan, J.), entered on or about December 20, 2023, which denied its motion for summary judgment, and granted defendant Hiscox Insurance Company's cross-motion for summary judgment and declaratory relief.
Ropers Majeski PC, New York (Andrew L. Margulis of counsel), for appellant.
Hodgson Russ LLP, Buffalo (Ryan K. Cummings of counsel), for Giorgio Armani Corporation, respondent.
Surdyk & Kachoyeanos, New York (Leonard S. Surdyk of counsel), for Hiscox Insurance Company, Inc., respondent.
SINGH, J.
Before us is whether a lawsuit is sufficiently related to prior suits as to be covered by the same insurance policy. We find that under the particular language of the policies at issue, it is.
This appeal arises out of three lawsuits and two insurance policies. One of the insurance policies was issued by defendant and counterclaim plaintiff Hiscox Insurance Company. The other was issued by plaintiff Zurich American Insurance Company (ZAI). Both were issued to defendant Giorgio Armani Corporation (GAC).
The lawsuits allege that GAC employee Javier Herrera used his position to sexually harass and assault women and that GAC made no effort to deter or punish his misconduct. Loreto-Hays v Herrera (No. 18-2-03961-31 [Wash Super Ct, Snohomish County]) (the Loreto-Hays action) was filed in January 2018, Oberloh v Giorgio Armani, Corp. (No. 2:18-cv-1729 [WD Wash]) (the Oberloh action) was filed in November 2018, and Christin v Herrera (No. 19-2-06197-31 [Wash Super Ct, Snohomish County]) (the Christin action) was filed in July 2019.
Hiscox acknowledged coverage of the Loreto-Hays and Oberloh actions. It denied coverage of the Christin action, which it asserted was filed outside the policy period. The parties eventually agreed to litigate their dispute in New York. Both ZAI and Hiscox moved for summary judgment, each asserting that the other's policy covered the Chrstin action. Supreme Court denied ZAI's motion and granted Hiscox's cross-motion.
The Insurance Policies The Hiscox policy covered the period in which the Loreto-Hays and Oberloh actions were filed. It is not disputed that these actions and the Christin action constitute Claims under the Hiscox policy. The Hiscox policy provides that once notice of a Claim is given, "any Claim which is subsequently made against the Insureds and reported to the Insurer . . . alleging any . . . Related Wrongful Act to that alleged in the Claim of which such notice has been given, shall be considered made at the time such notice was originally given." Related Wrongful Act(s) is defined as:
"Wrongful Act(s) as defined in the applicable Coverage Part which are the same, repeated or continuous to other Wrongful Act(s) as defined in the same applicable Coverage Part."
"Related Wrongful Act(s) shall also mean Wrongful Act(s) as defined in the applicable Coverage Part which arise from a common causal connection or cause the same [*2]or related damages, or a common nexus or nucleus of facts to other Wrongful Act(s) as defined in the same applicable Coverage Part."
"Claims can allege Related Wrongful Act(s) regardless of whether such Claims involve the same or different claimants, Insureds or legal causes of action."
The ZAI policy covered the later period in which the Christin action was filed. Again, it is undisputed that all three actions constitute Claims under this policy. The ZAI policy provides that "[a]ll Claims . . . which arise out of the same Wrongful Act and all Interrelated Wrongful Acts of Insureds shall be deemed one Claim," which "shall be deemed to be first made on the date the earliest of such Claims is first made against any Insured, regardless of whether such date is before or during the Policy Period." Interrelated Wrongful Acts are defined as "all Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes."
The Actions Loreto-Hays alleges that in 2015, while she was providing janitorial services to a GAC store, Herrera sexually assaulted her. She alleges that she reported the sexual assault to GAC, which took no action to protect her from Herrera. She further alleges that GAC knew or should have known that Herrera posed a danger to others.
Oberloh alleges that GAC and its employees, including Herrera, discriminated against her on the basis of her race and sex. As relevant here, she alleges that she learned Herrera had been sexually harassing three women, and later learned that he had sexually assaulted a coworker. She alleges that she reported both to GAC, that it knew women felt uncomfortable in the workplace because of Herrera, and that it did nothing. Allegedly, the women eventually quit because of Herrera's behavior, and Oberloh herself was fired on March 27, 2018.
In the Christin action, five women allege a variety of harassment by Herrera from 2013 until 2018. One plaintiff alleges that she was sexually assaulted by Herrera many times over a period of almost two years. The complaint alleges that, in response to complaints against him, Herrera was transferred to another store. He then allegedly subjected the remaining plaintiffs, who worked at that store, to years of unwelcome and degrading sexual contact.
The Christin complaint also alleges that GAC knew of Herrera's wrongdoing against women other than the plaintiffs. Among the misconduct alleged is that against Oberloh and Loreto-Hays. The Christin complaint repeats Oberloh's allegations that Herrera discriminated against her, for example, by referring to her using an ethnic slur. It further repeats her allegations that Oberloh reported the sexual harassment of female employees, that GAC took no steps to prevent such conduct, and that Oberloh was fired in 2018. The Christin complaint amplifies these allegations by specifying that, as a result of Oberloh's [*3]complaints, GAC transferred Herrera to another store, enabling him to prey on other women. The complaint alleges that one of the women whose conduct Oberloh reported was a plaintiff in the Christin action. Oberloh confirmed this at her deposition, and also testified that she had learned of the harassment of another Christin plaintiff, as well as of Loreto-Hays. The Christin complaint also repeats the allegations that Herrera sexually assaulted Loreto-Hays, that GAC did nothing, and the GAC knew or should have known that Herrera posed a risk to others.
Discussion In finding that the Christin actions and the prior actions were not sufficiently related, Supreme Court applied Roman Catholic Diocese of Brooklyn v National Union Fire Ins. Co. of Pittsburgh, Pa. (21 NY3d 139 [2013]). Yet Diocese of Brooklyn addressed whether separate acts constituted a single "occurrence" (see id. at 147-150), not whether they were "related" or "interrelated." When considering whether events or actions are related under an insurance policy, it is important to consider the precise wording of the policies (see Nomura Holding Am., Inc. v Federal Ins. Co., 629 Fed Appx 38, 40 [2d Cir 2015]).
We therefore ask whether the Christin action shares "a common nexus or nucleus of facts" with the earlier actions, and whether it "[has] as a common nexus" with them "any fact, circumstance, situation, event, transaction [or] cause." This is a broad test, which should not be "read[] . . . narrowly at the expense of applying its plain language" (Brecek & Young Advisors, Inc. v Lloyds of London Syndicate 2003, 715 F3d 1231,1239 [10th Cir 2013]). Applying this test, we find that the Christin action should be treated as made no later than the filing date of the Oberloh action.
Nothing in the language of either policy restricts Related or Interrelated Wrongful Acts to those harming the same plaintiff. Rather, Herrera's actions and GAC's response — or lack of response — to them may present the common nexus or nucleus of fact (see id. at 1238-1239 [finding that claims by multiple plaintiffs alleging similar misconduct were "Interrelated Wrongful Acts"]). The Oberloh and Christin complaints share allegations that Oberloh learned Herrera was sexually harassing three women employed by GAC, that Oberloh reported this harassment to GAC, that all three women eventually quit because of Herrera's misconduct, and that GAC took no action to punish Herrera or prevent repetition. Two of those women were plaintiffs in the Christin action. Furthermore, all three complaints allege that Herrera sexually assaulted Loreto-Hays and GAC did nothing.
Likewise, in both policies, common facts and common causation are presented in the disjunctive. Shared causation is necessary only in that the allegations must "aris[e] from" the "common nexus or nucleus of facts." "In insurance contracts, the phrase 'arising out of' is ordinarily understood to mean originating from, incident to, or having connection with. It requires [*4]only that there be some causal relationship between the injury and the risk for which coverage is provided or excluded" (Natural Organics, Inc. v OneBeacon Am. Ins. Co., 102 AD3d 756,759 [2d Dept 2013][internal citations and quotation marks omitted], lv dismissed 22 NY3d 989 [2013]). Plaintiffs in the Christin action allege that GAC's failure to act on its knowledge of Herrera's misconduct enabled him to harm them. Had GAC taken action after receiving multiple complaints of sexual misconduct committed by Herrera and not transferred Herrera to a different store, the plaintiffs working at that store would not have been harmed. These allegations "originat[e] from" and have "some causal relationship" with the allegations in the earlier actions (id.).
We find that the Christin action is a Related Wrongful Act under the Hiscox policy and an Interrelated Wrongful Act under the ZAI policy. It is thus covered by the Hiscox policy.
Conclusion Accordingly, the order and judgment of Supreme Court, New York County (Margaret A. Chan, J.), entered on or about December 20, 2023, which denied ZAI's motion for summary judgment, and granted Hiscox's cross-motion for summary judgment and declaratory relief, should be reversed, on the law, without costs, Hiscox's cross-motion denied, and Zurich's motion granted.
Order and judgment, Supreme Court, New York County (Margaret A. Chan, J.), entered on or about December 20, 2023, reversed, on the law, without costs, defendant Hiscox's cross-motion denied, and plaintiff Zurich's motion granted.
Opinion by Singh, J. All concur.
Kern, J.P., Singh, González, Kennedy, Higgitt, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 11, 2025