OPINION OF THE COURT
Edward H. Lehner, J.
The central issue posed by the various motions before me is whether an insurance company, which 15 months after it agreed to defend an action notified the insured that it would not provide coverage because the underlying claim was not made during the policy period, may be estopped from denying coverage.
Pending are motions for summary judgment: (i) by defendants and third-party plaintiffs Lafayette Studios Corp. (Lafayette), Mike Harris, Lynne Kwalwasser, Sam Glazer, Alice Federico, Michael Tobey and Ellen Kozak against each third-party defendant; (ii) by third-party defendant Firemen’s Insurance Company of Washington, D.C. (Firemen’s) dismissing the third-party complaint and cross claims; (iii) by third-party defendant Atlantic Mutual Insurance Company (Atlantic) dismissing the third-party complaint and cross claims; and (iv) by third-party defendant B & B Coverage Ltd. (B & B).
Facts
Lafayette is a cooperative housing corporation that owns the building located at 280-284-290 Lafayette Street in the Borough of Manhattan. Plaintiff Rafael Martini (Martini) is a shareholder occupying apartment 2A in the building under a proprietary lease.
From July 1, 1994 to July 1, 1995 Lafayette was covered by an insurance policy issued by Atlantic and procured by Lafayette’s insurance broker, B & B. The policy included directors’ and officers’ coverage on a “claims made” basis, which obligated Atlantic to “pay damages the insured became legally obligated to pay because of any ‘claim’ first made against the insured during the policy period” provided the claim arose out of a negligent act, error or omission. It also included com *385 mercial general liability coverage which was limited to bodily injury or property damage occurring during the policy period. For the period July 1, 1995 to July 1, 1996, B & B obtained similar coverage on Lafayette’s behalf from Firemen’s. Under this policy the insured was obligated to give Firemen’s written notice “as soon as practicable” of an incident or “wrongful act” that may result in a claim.
In March 1995 Lafayette served Martini with a notice to cure alleging violations of the proprietary lease. In April 1995, Martini commenced an action against Lafayette seeking a Yellowstone injunction and a judgment declaring that he was not in violation of the proprietary lease. In November 1995, Martini moved by order to show cause to, inter alia, amend the complaint to add as defendants the members of the Board of Directors of Lafayette and to assert claims challenging the “work rule” and sublet policies, and to assert causes of action for monetary damages, including a tort claim for intentional infliction of mental distress.
In a letter dated November 21, 1995, Lafayette’s corporate counsel sent B & B a copy of plaintiffs order to show cause and related material. She also advised B & B that a “claim has been made against the cooperative which we think the appropriate insurance carrier should be advised of”. It is undisputed that although the insurance policy issued by Atlantic was no longer in effect, B & B notified only Atlantic of Martini’s motion.
On January 11, 1996, Atlantic wrote the following to Lafayette: “Please be advised, after thorough review of the insured’s policy, we will be providing [Lafayette] with a defense in this litigation. This file has been referred to the law firm of Smetana Villani & Gash.”
In an order entered June 19, 1996, I denied that portion of plaintiffs motion seeking leave to amend the complaint to assert claims for monetary damages. However, on December 17, 1996 the Appellate Division reversed (234 AD2d 146, 147), stating that “inasmuch as the monetary aspect of the complaint is intertwined with the rest of the complaint, it should also have been permitted”. Thereafter, in March 1997, plaintiff served an amended complaint in the form he had requested.
In its answer filed by its corporate counsel, Lafayette generally denied plaintiffs allegations and asserted affirmative defenses and counterclaims. Although Atlantic had stated it would provide a defense, Lafayette at all times continued to be represented in the action (including the aforesaid appeal) by *386 its corporate counsel, with an attorney appointed by Atlantic monitoring the litigation.
In a letter dated April 8, 1997, Atlantic reversed its position and advised Lafayette that it would not defend or indemnify Lafayette in the litigation because the amended complaint “was not a claim made during the policy period, but was a claim first made, at the earliest, after the expiration of the Atlantic Mutual policy period”. Coverage was also denied on the basis that the claims in the amended complaint were not covered by the policy. B & B first learned of its error on April 15, 1997 when Lafayette’s corporate counsel wrote to it advising of Atlantic’s rejection of the claim and requesting B & B to notify the correct carrier.
On May 7, 1997, Firemen’s wrote to Lafayette stating that on April 22, 1997 it had received various papers in connection with this action and that it was refusing to defend or indemnify Lafayette for any of the claims asserted in the amended complaint because (1) the claims were not covered by either policy issued by it; and (2) Lafayette breached the terms of the policy by failing to notify Firemen’s of the litigation as soon as practicable.
In June 1997, defendants commenced a third-party action against Atlantic, Firemen’s and B & B for a judgment declaring that (1) Atlantic has breached the contract of insurance by refusing to indemnify and defend Lafayette; (2) Atlantic is estopped from withdrawing from Lafayette’s defense; and (3) Firemen’s has breached the contract of insurance by refusing to indemnify and defend Lafayette. Lafayette also seeks a monetary award for attorneys’ fees incurred in defending the action and commencing the third-party action. Further, in the event that the court found neither carrier obligated to third-party plaintiffs, they request a declaration that B & B was negligent and must indemnify them against any liability that may be imposed on them.
Discussion
Turning first to that portion of Lafayette’s motion that seeks summary judgment against Firemen’s, the undisputed facts show that Firemen’s did not receive notice of the Martini action until April 22, 1997. Lafayette’s contention that notice was timely since it was a mere month after Martini served the amended complaint is specious. Under the policy, the insured was obligated to give written notice “as soon as practicable” of a wrongful act that “may” result in a claim as well as of a *387 claim itself. Accordingly, the “mere possibility” of the claim should have alerted Lafayette to the necessity of promptly informing the insurer (Heydt Contr. Corp. v American Home Assur. Co., 146 AD2d 497, 499 [1st Dept 1989], lv dismissed 74 NY2d 651 [1989]). Lafayette first learned of a wrongful act that may result in a claim in November 1995 when Martini moved to amend his complaint.
Lafayette also contends that even if the notice was late, it was furnished “as soon as practicable” under the circumstances. According to Lafayette, the extenuating circumstance justifying the delay was the broker’s error in sending notice to the wrong insurer.
In Heydt Contr. Corp. v American Home Assur. Co. (supra, at 498), the law on notice was summarized as follows: “The law is settled that an insurer is not obligated to pay for the loss of its insured in the absence of timely notice in accordance with the terms of the policy [citations omitted]. As the Court of Appeals declared in Security Mut. Ins. Co. v Acker-Fitzsimons Corp. ([31 NY2d 436,] 440), ‘[njotice provisions in insurance policies afford the insurer an opportunity to protect itself * * * and the giving of the required notice is a condition to the insurer’s liability. * * * Absent a valid excuse, a failure to satisfy the notice requirement vitiates the policy * * * and the insurer need not show prejudice before it can assert the defense of noncompliance’.”
The phrase “as soon as practicable” does not require immediate or prompt action. Rather, it calls for a determination of what was within a reasonable time in light of the facts and circumstances of the case at hand (Mighty Midgets v Centennial Ins. Co., 47 NY2d 12, 19 [1979]). What is reasonable is usually left for determination at trial. However, “where there is no excuse for the delay and mitigating considerations are absent, the issue may be disposed of as a matter of law” (Heydt Contr. Corp. v American Home Assur. Co., supra, at 498-499).
The question raised herein is whether, given the broker’s mistake, notice to Firemen’s was given “as soon as practicable”. An analysis of this issue must begin with the general rule that a broker is the agent of the insured (Security Mut. Ins. Co. v Yogert, 31 NY2d 436, 442, n 3 [1972]). Shaw Temple A.M.E. Zion Church v Mount Vernon Fire Ins. Co. (199 AD2d 374 [2d Dept 1993]) is instructive on this issue. There, a parishioner of plaintiff church was injured on its property. The church’s insurance broker was notified the next morning, but did not notify the carrier until nine months after the accident. *388 The insurer then disclaimed coverage on the ground of late notice. The Appellate Division ruled that since the broker was the agent of the insured, the notice to the broker did not satisfy the policy requirement of timely notice to the insurer
The 17-month delay at bar, like the nine-month delay in the above case, was due to a broker’s error and does not relieve the insured of its obligation to timely notify the insurer of the claim (compare, Mighty Midgets v Centennial Ins. Co., supra [where the Court of Appeals found that a seven-and-a-half-month delay in notifying the insurer was not unreasonable where the delay was due to misinformation provided by the insurer’s agent]).
Universal Underwriters Ins. Co. v Patriot Ambulette (149 AD2d 500 [2d Dept 1989]), cited by Lafayette in its memorandum of law, is distinguishable from the instant matter. Although the Court there determined that the trial record supported a determination that delay resulting from the broker’s error in notifying the wrong insurer was not unreasonable as a matter of law, the delay was only five months. Accordingly, the insurer had an opportunity to investigate the accident shortly after it occurred, which is the object of the notice requirement. Furthermore, the Court noted that a representative of the insurer visited the injured person approximately three months after the accident.
Accordingly, Firemen’s motion is granted and it is declared that Firemen’s is not obligated to defend or indemnify Lafayette due to its noncompliance with the policy notice requirement and the third-party complaint is otherwise dismissed as against Firemen’s. B & B’s cross claim against Firemen’s for indemnification and contribution is also dismissed. The Clerk shall enter judgment accordingly, severing the action as against the remaining parties.
With respect to the claims against Atlantic, I am presented with facts whereby it is evident that while B & B notified the wrong insurance company of the claim, Atlantic (while it may reasonably have been in doubt as to whether the claims asserted by plaintiff fell within the terms of the policy) certainly should have been aware that the claim was not reported until well after its policy expired (and thus not covered), and yet it advised Lafayette that it would be providing a defense to the claims for money damages asserted by plaintiff.
Clearly the advice by Atlantic in January 1996 that it would provide a defense, which commitment was not withdrawn until April 1997, resulted in prejudice to Lafayette in that as a con *389 sequence thereof it failed to timely notify Firemen’s, the carrier which was providing coverage during the period in which the claim was asserted. A prompt disclaimer on the part of Atlantic would have put Lafayette on notice that it failed to advise the proper insurer.
Equitable estoppel has been applied in numerous cases to prohibit an insurer from declining coverage even though coverage does not exist. For example, in Schiff Assocs. v Flack (51 NY2d 692, 699 [1980]), the Court wrote: “Distinguished from waiver, of course, is the intervention of principles of equitable estoppel, in an appropriate case, such as where an insurer, though in fact not obligated to provide coverage, without asserting policy defenses or reserving the privilege to do so, undertakes the defense of the case, in reliance on which the insured suffers the detriment of losing the right to control its own defense. In such circumstances, though coverage as such does not exist, the insurer will not be heard to say so”. In Corcoran v Abbott Sommers, Inc. (143 AD2d 874, 876 [2d Dept 1988]), it was stated: “As a general rule, where an insurer defends an action on behalf of its insured with knowledge of a defense to the coverage, it is thereafter estopped from asserting that the policy does not cover the claim”. However, estoppel will only be applied where the insured demonstrates prejudice.
These principles were followed in: National Indem. Co. v Ryder Truck Rental (230 AD2d 720, 721 [2d Dept 1996]), where the subject automobile was not a “covered vehicle” under the policy; Hartford Ins. Group v Mello (81 AD2d 577, 578 [2d Dept 1981]), where the defamation claim asserted accrued prior to the effective date of the policy, the Court observing that there “is no doubt that Hartford knew the effective date of its policy”; and Matter of Carney v Newburgh Park Motors (84 AD2d 599 [3d Dept 1981]). In the recent case of Indemnity Ins. Co. v Charter Oak Ins. Co. (235 AD2d 521 [2d Dept 1997]), the broker sent a notice of claim to the wrong carrier in that the accident involved therein occurred prior to the effective date of the policy issued by such carrier. Because the carrier proceeded to provide a defense to the action up to the filing of a note of issue, the Court affirmed a determination that the insurer was “equitably estopped from denying coverage” (at 522). But see Nassau Ins. Co. v Manzione (112 AD2d 408, 409 [2d Dept 1985]), where it was held that where “there is no coverage under an insurance policy because the policy was not in existence at the time of the accident, estoppel cannot be used to create coverage”. This conclusion of the Second Department appears contrary to the above-cited cases of that Department.
*390 In the most recent case found on this issue decided by the First Department (Sedgwick Ave. Assocs. v Insurance Co., 203 AD2d 93 [1994]), the Court first stated the above-quoted rule of the Manzione case (supra), but then, although noting that the insurer’s policy did not cover the building which was the scene of the accident, went on to acknowledge the estoppel rules referred to above and concluded that the subject landlord was not prejudiced by the insurer’s temporary representation of the landlord in the underlying tort action and therefore the insurer was not equitably estopped from disclaiming coverage. Moreover, the Court noted that the landlord, rather than being prejudiced, was benefited by the insurer’s “gratuitous legal representation” (at 94). This decision is somewhat confusing in that while the Court indicated that there was no policy in existence that covered the subject building, it did not apply the above-quoted rule of the Manzione case to dismiss the action against the insurer, but rather decided the case applying equitable estoppel principles. From this I can only gather that the fact that the landlord involved in that case had a policy that covered other buildings permitted a consideration of such principles.
Under the facts presented herein, I hold that Lafayette is entitled to summary judgment on its cause of action against Atlantic and declare that Atlantic is required to defend and indemnify Lafayette for the damage claims asserted against it herein. In the above cases where equitable estoppel was applied against an insurer, the prejudice found related to actions taken by the insurer in defending litigation that in some manner was detrimental to the party seeking coverage. Here the prejudice does not relate to actions taken by Atlantic in litigation, as its attorneys were only monitoring the action on behalf of Atlantic, which lawsuit is primarily a landlord-tenant dispute. However, Atlantic’s act that was prejudicial to Lafayette was advising it that it was covered by the Atlantic policy and not retracting that commitment for over a year, which lulled Lafayette into not being concerned about the need for any other coverage.
In light of the fact that the error of B & B in notifying the wrong carrier resulted in Lafayette having to prosecute the third-party action, summary judgment is granted against B & B in favor of Lafayette for the costs incurred in connection therewith. This claim is severed from the main action, and *391 upon the filing of a note of issue and statement of readiness the Clerk shall place this severed claim on the calendar for an assessment of damages.