**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 18, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

BRECEK & YOUNG ADVISORS, INC.,

     Plaintiff - Appellee,

v.

LLOYDS OF LONDON SYNDICATE
2003,

     Defendant - Appellant.

No. 16-3245
(D.C. No. 2:09-CV-02516-JAR)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **BALDOCK**, and **MORITZ**, Circuit Judges.
_____

Lloyds of London Syndicate 2003 ("Lloyds") appeals the district court's

judgment following a bench trial. The court held that Lloyds is equitably estopped

from denying coverage, under a professional liability policy, of claims brought

against Brecek & Young Advisors, Inc. ("BYA") in an arbitration. Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

## I.    Background

This case comes to us after a previous appeal in which we reversed the district court's grant of summary judgment in favor of BYA and remanded for further proceedings.  *See Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003*, 715 F.3d 1231, 1243 (10th Cir. 2013) ("*BYA I*").  Lloyds had issued a professional liability policy ("Policy") to BYA covering claims made and reported during the period December 1, 2006, to December 1, 2007.  *Id.* at 1233.  Lloyds agreed to defend BYA in an arbitration filed by 26 claimants in 2007 ("Wahl Arbitration"), subject to a reservation of rights.  *Id.* at 1234-35, 1236-37.

After receiving notice of the Wahl Arbitration, Lloyds asserted two positions as to coverage of that claim, both of which were based on a provision in the Policy addressing claims that arise out of "Interrelated Wrongful Acts."  *Id.* at 1233 (internal quotation marks omitted).  Under the Policy, such interrelated claims are "considered a single Claim," *id*. (internal quotation marks omitted), and "Lloyds is not responsible for indemnifying or defending BYA for claims made during the policy period which are interrelated with claims made prior to the policy period," *id.* at 1234.  BYA had reported a previous arbitration claim ("Colaner Arbitration") to a different insurer, Fireman's Fund, seeking coverage under a prior professional liability policy that was effective from December 1, 2005, through December 1, 2006.  Lloyds' agent notified BYA by email on November 20, 2007, that coverage counsel for Lloyds and Fireman's Fund had each determined that the Wahl and Colaner Arbitrations were *not interrelated*.  *Id.* at 1236.  Lloyds *also* took the positon

that the 26 claims *within* the Wahl Arbitration were not interrelated and were therefore subject to separate $50,000 retentions under the Policy. *Id.* BYA disputed Lloyds' position on the interrelatedness of the claims in the Wahl Arbitration. *Id.*

Lloyds proceeded to defend BYA in the Wahl Arbitration under its stated positions regarding coverage. The parties settled the arbitration in March 2009, with Lloyds indemnifying BYA on the individual claims to the extent they exceeded the separate $50,000 retentions. Lloyds and BYA ultimately paid approximately $385,000 and $932,000, respectively, to defend and settle the Wahl Arbitration. *Id.* In the settlement, BYA reserved its right to challenge Lloyds' position that the 26 Wahl claims were not interrelated.

BYA then filed this action seeking damages for Lloyds' failure to defend and indemnify it for the amount it incurred in the Wahl Arbitration above a single $50,000 retention. *Id.* at 1236-37. The parties filed cross-motions for summary judgment. In its motion, Lloyds suggested for the first time, in a footnote, an alternative position regarding coverage of the Wahl Arbitration. *Id.* at 1237. Lloyds contended that, if the Wahl claims arose from interrelated wrongful acts, then all of the Wahl claims also related back to the claims made in the Colaner Arbitration and the claims made in a third arbitration previously filed against BYA ("Knotts Arbitration"). *Id.* Under Lloyds' new relation-back defense, there would be no coverage at all under the Policy for the Wahl Arbitration. *See id.*

The district court granted BYA summary judgment, holding that the 26 Wahl claims were interrelated. *Id.* Over BYA's objection, however, the court also granted

3

Lloyds leave to submit supplemental briefing on its new coverage defense. *Id.*

Lloyds then asserted its relation-back defense, asking the district court to order BYA to reimburse it for all sums paid in defending and indemnifying BYA in the Wahl Arbitration. *Id.* BYA responded that Lloyds was barred by waiver and/or estoppel from raising its new coverage defense and, alternatively, that the Wahl, Knotts, and Colaner Arbitrations did not arise from Interrelated Wrongful Acts. *Id.* The district court ultimately denied Lloyds' second summary judgment motion, rejecting BYA's waiver and estoppel arguments, but holding that the Wahl Arbitration was not interrelated with the Knotts and Colaner Arbitrations. The court entered judgment in favor of BYA for $1,155,541.73. *Id.*

On appeal in *BYA I*, Lloyds abandoned its previous position that the 26 Wahl Arbitration claims were not interrelated and argued solely that the Wahl claims related back to the claims in the Knotts and Colaner Arbitrations. *Id.* We agreed with Lloyds, holding that the three arbitrations all arose from Interrelated Wrongful Acts, as defined in the Policy. *Id.* at 1239. After rejecting BYA's waiver contention, we took up its estoppel argument. *Id.* at 1240. Applying New York law, we concluded that the district court abused its discretion in holding that BYA failed to make an adequate showing of prejudice in support of its estoppel defense to Lloyds' claim for reimbursement. *Id.* at 1243 ("Certainly, BYA has established prejudice as to Lloyds' attempt to recoup the approximately $385,000 it has already paid—at the time BYA settled the Wahl Arbitration Lloyds had expressly promised to provide

4

coverage up to that amount.").  In reversing and remanding for further proceedings, we said:

> Although the district court erred in concluding the defense of equitable estoppel was unavailable to BYA, it does not necessarily follow that BYA is entitled to recover the same damages awarded by the district court on the (erroneous) basis that the Wahl claims did not relate back to the Knotts and Colaner claims. . . .  In determining whether BYA is entitled to any additional recovery . . . the district court must consider the extent to which BYA detrimentally relied on Lloyds' representations, if at all.  Thus, the court must consider whether Lloyds' erroneous representation that the twenty-six Wahl claims were not interrelated under the Policy negates any additional claim of detrimental reliance on the part of BYA.

*Id.*  On remand, after a bench trial, the district court held that BYA detrimentally relied on Lloyds' representations regarding coverage of the Wahl Arbitration, causing BYA to forgo other available coverage from Fireman's Fund.  It held that Lloyds was therefore estopped from denying full coverage of the Wahl Arbitration as a single claim.  The court entered judgment in favor of BYA for $931,859.59, plus prejudgment interest.  It also denied Lloyds' motions filed under Fed. R. Civ. P. 52(b) and 59 for amended or additional findings or a new trial.

## II.    Standards of Review

After a bench trial, the district court entered findings of fact and conclusions of law, holding that Lloyds was equitably estopped from denying full coverage of the Wahl Arbitration.  "We review the district court's exercise of its equitable powers for abuse of discretion." *Clark v. State Farm Mut. Auto. Ins. Co.*, 433 F.3d 703, 709 (10th Cir. 2005).  "A district court abuses its discretion where it commits a legal error or relies on clearly erroneous factual findings, or where there is no rational

5

basis in the evidence for its ruling." *Id.* (internal quotation marks omitted); *see also*

*United States v. Estate of St. Clair*, 819 F.3d 1254, 1264 (10th Cir. 2016) (after bench

trial, reviewing district court's legal conclusions de novo and its factual conclusions

for clear error).

A factual finding "is clearly erroneous when the reviewing court has a definite

and firm conviction that it is mistaken, even though there may be some evidence to

support it." *Estate of St. Clair*, 819 F.3d at 1264 (internal quotation marks omitted).

The clearly-erroneous review standard applies to both subsidiary and ultimate facts.

*See Doelle v. Mountain States Tel. & Tel.*, 872 F.2d 942, 944 (10th Cir. 1989).[1]

We review the district court's denials of post-judgment relief under Rules 52

and 59 for an abuse of discretion. *See Lyons v. Jefferson Bank & Trust*, 994 F.2d

716, 719 (10th Cir. 1993) (noting district court's discretion under Rules 52 and 59).

## III. Discussion

"Under New York law, 'where an insurer defends an action on behalf of an

insured, with knowledge of a defense to the coverage of the policy, it thereafter is

estopped from asserting that the policy does not cover the claim.'" *BYA I*, 715 F.3d

at 1240 (brackets omitted) (quoting *Hartford Ins. Grp. v. Mello*, 437 N.Y.S.2d 433,

---

[1] Lloyds contends that our review is de novo to the extent that it challenges "the sufficiency of the evidence" under Rule 52(a)(5). But the cases it cites for this proposition are inapposite, as they relate to review of a district court's denial of a motion under Fed. R. Civ. P. 50(a) after a jury trial. *See Nieto v. Kapoor*, 268 F.3d 1208, 1217 (10th Cir. 2001) (holding Rule 50 is inapplicable in a case involving a bench trial). Rather, we have said that "[t]he clearly erroneous rule governs the sufficiency of the evidence to support the findings" after a trial to the court. *Davis v. Cities Serv. Oil Co.*, 420 F.2d 1278, 1279 (10th Cir. 1970); *see also Willner v. Univ. of Kan.*, 848 F.2d 1023, 1030 (10th Cir. 1988) (same).

6

434 (N.Y. App. Div. 1981)). With regard to BYA's claim for additional recovery under the Policy, we directed the district court on remand to determine "the extent to which BYA detrimentally relied on Lloyds' representations, if at all," and more specifically, "whether Lloyds' erroneous representation that the twenty-six Wahl claims were not interrelated under the Policy negates any additional claim of detrimental reliance on the part of BYA." *Id.* at 1243.

## A.     District Court's Findings and Conclusions on Remand

On remand, the district court cited the testimony of Natalie Haag, BYA's in-house counsel, in support of its finding that BYA was entitled to additional recovery under the Policy because it had relied, to its detriment, on Lloyds' representations regarding coverage of the Wahl Arbitration. The court held that BYA reasonably relied on Lloyds' representation that the Wahl Arbitration was covered under the Policy, subject only to a dispute about the number of applicable retentions. Ms. Haag testified that she relied on Lloyds' written agreement in August 2007 to defend BYA in the Wahl Arbitration. Aplt. App., Vol. 2 at 536-38. She also relied on an email from Lloyds' agent dated November 20, 2007, informing BYA that coverage counsel for Lloyds and Farmers had each concluded that the claims in the Wahl and Colaner Arbitrations were not interrelated. *Id.* at 542-43; *id.*, Vol. 4 at 1122. Lloyds maintained that coverage position throughout its defense of the Wahl Arbitration, raising a relation-back defense for the first time eighteen months after that arbitration was settled.

7

The court also found that BYA's reliance was reasonable and not negated by Lloyds' erroneous representation that the 26 claims in the Wahl Arbitration were not interrelated. The court reached this conclusion because, according to Ms. Haag, Lloyds' position regarding the 26 separate retentions was consistent with its representation that the Wahl and Colaner Arbitrations were not interrelated and further solidified BYA's understanding that Lloyds, rather than Fireman's Fund, would provide coverage for the Wahl Arbitration. *See id.*, Vol. 2 at 544, 546-50.

Lastly, the court found that BYA's reliance on Lloyds' representations regarding coverage of the Wahl Arbitration was detrimental. Ms. Haag testified that, had Lloyds raised a relation-back defense while the Wahl Arbitration was pending—thereby denying all coverage for that arbitration under the Policy—BYA would have pursued coverage under its preceding policy with Fireman's Fund. *Id.* at 537, 551, 587-88, 594. The court found that Lloyds' consistent coverage representations during the pendency of the Wahl Arbitration caused BYA to forgo other available coverage under the Fireman's Fund policy, which prejudiced BYA because it had back-to-back claims-made policies; consequently, the court reasoned that either the Lloyds Policy or the Fireman's Fund policy would provide coverage for the Wahl Arbitration, but not both policies. Ms. Haag further testified that coverage of the Wahl Arbitration under the Fireman's Fund policy would have been beneficial because BYA had already satisfied the $50,000 deductible in the previous arbitrations. *Id.* at 541. The district court found that "[o]nce Lloyds settled the Wahl Arbitration, . . . BYA was prejudiced because it could not reverse the character and

8

strategy of the defense to allow Fireman's Fund to defend it and participate in the Settlement." *Id.* at 453.

Lloyds argues that BYA's reliance on its representations regarding coverage of the Wahl Arbitration was not reasonable and that BYA failed to demonstrate prejudice.

### B. Reasonable Reliance

Lloyds challenges the district court's finding that BYA reasonably relied on Lloyds' representations regarding coverage of the Wahl Arbitration. Lloyds first asserts that "mere silence" is insufficient to invoke estoppel, and argues there is no evidence of any affirmative representation by Lloyds regarding the interrelatedness of the claims in the Wahl, Knotts, and Colaner Arbitrations—at least not after the November 2007 email from Lloyds' agent. But the district court found that Lloyds was not silent: it informed BYA in November 2007 of its determination that the Wahl and Colaner Arbitrations were not interrelated, and Lloyds maintained that position throughout the Wahl Arbitration proceedings, at all times agreeing to defend and provide coverage for BYA in that arbitration.

Lloyds also argues that BYA failed to show that Lloyds' representations prevented it from pursuing coverage from Fireman's Fund. Lloyds cites nothing to support its proposition that BYA must show obstruction or coercion rather than reasonable reliance. Lloyds maintains, however, that BYA made a considered decision not to pursue coverage with Fireman's Fund, independent of any reliance on Lloyds' representations. More specifically, Lloyds argues that once BYA challenged

9

Lloyds' position that the 26 claims in the Wahl Arbitration were not interrelated, BYA should have also determined that Wahl related back to Knotts and Colaner, thereby leading to the conclusion that the Wahl Arbitration should have been covered by the previous policy issued by Fireman's Fund.

The district could held otherwise. It found that Lloyds clearly had knowledge of the potential relation-back defense when it accepted coverage and settled the Wahl Arbitration, yet Lloyds did not assert that defense. The court pointed to Ms. Haag's testimony that she relied on Lloyds' stated position that the Wahl and Colaner Arbitrations were not interrelated—a position that did not waver even after BYA objected to Lloyds' stance that Wahl involved 26 separate, unrelated claims. *See id.* at 543, 548-49. The court rejected Lloyds' argument that BYA should have known, after doing its own analysis, that if the claims in the Wahl Arbitration were interrelated, then Wahl necessarily related back to Knotts and Colaner. Ms. Haag testified that she thought there were factual distinctions between the claims in the Wahl Arbitration and those in the previous arbitrations, *id.* at 547, although she realized that Lloyds might assert a relation-back defense in response to BYA's contention regarding the interrelatedness of the claims in the Wahl Arbitration, *id.* at 590. She did not do a legal analysis of the relation-back issue, however, because Lloyds' position on coverage had remained unchanged. *Id.* at 547, 572-73, 586-87.

As further evidence of the reasonableness of BYA's reliance, the district court noted that all parties involved—Lloyds and Fireman's Fund and their respective coverage counsel, as well as the district court up until this court's decision in

10

*BYA I*—had considered the issue and agreed that the Wahl Arbitration did not relate back to the previous arbitrations. As the court observed, "[I]t was not until Lloyds abandoned on appeal the issue of whether the twenty-six Wahl claims were interrelated and instead pursued the relation-back defense that the argument was given any credence." *Id.* at 451. The district court also credited Ms. Haag's testimony that, *if* Lloyds had asserted a relation-back defense prior to settlement of the Wahl Arbitration, she would have insisted that Fireman's Fund participate in the defense and settlement. *See id.* at 537, 551, 587-88.

Lloyds argues that BYA nevertheless unreasonably relied on Lloyds' coverage representation rather than pursuing coverage from Fireman's Fund. But Ms. Haag explained that, in light of Lloyds accepting coverage of the Wahl Arbitration, and Fireman's Fund denying coverage—with both insurers in agreement that the claims in Wahl did not relate back—she believed that BYA did not have grounds for a claim against Fireman's Fund. *Id.* at 551-52, 591-92. She testified it was not until Lloyds asserted its relation-back defense that BYA had a non-frivolous claim against Fireman's Fund. *Id.* at 591. And Lloyds' own expert testified that he did not recall any instance in his long career in which an insured had brought suit to determine which of two insurance companies was responsible for a claim where, as here, the insurance companies agreed as to which policy applied. *Id.* at 634.

On the issue of reasonable reliance, we conclude that although Lloyds offers a different analysis of the evidence, it fails to demonstrate that the district court's findings are clearly erroneous. This is so because "[w]here there are two permissible

11

views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Keys Youth Serv., Inc. v. City of Olathe*, 248 F.3d 1267, 1275 (10th Cir. 2001) (internal quotation marks omitted); *see also Rosenfield v. Kay Jewelry Stores, Inc.*, 384 F.2d 98, 100 (10th Cir. 1967) (same regarding a reasonableness determination in a bench trial).

## C.    Prejudice

Lloyds argues that BYA failed to demonstrate that it was prejudiced by its reliance on Lloyds' representations regarding coverage of the Wahl Arbitration.  In *BYA I*, we noted that, under New York law, "'[p]rejudice is established only where the insurer's control of the defense is such that the character and strategy of the lawsuit can no longer be altered.'"  715 F.3d at 1242 (quoting *Federated Dep't Stores, Inc. v. Twin City Fire Ins. Co.*, 807 N.Y.S.2d 62, 68 (N.Y. App. Div. 2006)). We held that "[h]ere, it is axiomatic that the character and strategy of the Wahl Arbitration can no longer be altered because it was settled.  Courts have found prejudice for purposes of estoppel in circumstances in which the insurer's control of the insured's defense has been significantly less extensive." *Id.*

BYA contends that this court previously determined in *BYA I* that it was prejudiced by Lloyds' representations.  But BYA's contention mischaracterizes our previous decision, in which we held that "[c]ertainly, BYA has established prejudice as to Lloyds' attempt to recoup the approximately $385,000 it has already paid—at the time BYA settled the Wahl Arbitration Lloyds had expressly promised to provide coverage up to that amount." *Id.* at 1243.  We remanded for the district court to

12

determine the extent to which BYA detrimentally relied on Lloyds' representations such that it was entitled to *additional* recovery. *Id.* On remand, the district court correctly construed *BYA I* as holding that Lloyds' control of the defense of Wahl and its contribution to the settlement "was more than adequate to show prejudice under New York law, at least with respect to the $385,000 already paid by Lloyds as part of the Wahl Settlement." Aplt. App., Vol. 2 at 446. We therefore address Lloyds' contentions regarding prejudice.

Lloyds first argues that there was no evidence that BYA suffered any prejudice or damage to its interests from the manner in which appointed counsel defended the Wahl Arbitration. Lloyds points to evidence that, on BYA's recommendation, Lloyds retained the same attorney who had defended BYA in the Knotts and Colaner Arbitrations. Per Ms. Haag, Lloyds did not hinder or affect appointed counsel's defense of the Wahl Arbitration. And the district court found that "BYA has no issue with the manner in which [counsel] defended the Knotts, Colaner, and Wahl claims. BYA does not contend that Lloyds's representations caused it to instruct [counsel] to alter his defense strategies with regard to the Wahl claim." *Id.* at 436 (footnote omitted). Based upon this evidence, Lloyds argues that BYA failed to demonstrate that the character and strategy of the defense of the Wahl Arbitration would have been different had Lloyds asserted its relation-back defense before the settlement.

The district court rejected Lloyds' contention, holding that BYA's reliance was detrimental. First, the court pointed to Ms. Haag's testimony that she would not have authorized settlement of the Wahl Arbitration on behalf of BYA and would have

13

pursued coverage from Fireman's Fund, if Lloyds had reversed its coverage position before the settlement.  The court continued:

> Because BYA had back-to-back claims-made policies, either the Lloyds Policy or the [Fireman's Fund policy] would provide coverage for the Wahl Arbitration, but not both.  [Ms.] Haag testified that it would have been to BYA's advantage if Wahl had been covered under the [Fireman's Fund policy], because that would have saved BYA from paying the $50,000 each claim deductible.  Once Lloyds settled the Wahl Arbitration, however, BYA was prejudiced because it could not reverse the character and strategy of the defense to allow Fireman's Fund to defend it and participate in the Settlement.

*Id.* at 453.  The court reasoned further that settlement of the Wahl Arbitration "created coverage defenses that otherwise would not have existed under the [Fireman's Fund policy], specifically, voluntary payments and failure to obtain consent to settlement provisions under the [policy], as well as laches, statute of limitations, and other defenses related to the delay in pursuing the coverage claim." *Id.*

Lloyds argues that BYA's evidence was nonetheless insufficient to demonstrate prejudice under New York law.  It maintains that BYA could not establish prejudice based on evidence that the defense and settlement of the Wahl Arbitration would have been controlled by a different carrier.  Lloyds thus attempts to sharply limit the type of prejudice necessary to create estoppel under New York law.  But it cites nothing to support its proposition that BYA's satisfaction with appointed counsel's defense and settlement of the Wahl Arbitration precludes a finding of prejudice.  In fact, New York case law does not support Lloyds' contention.  In particular, courts have recognized that hindering an insured's interest

14

in seeking coverage or indemnification from another source may be sufficient to show prejudice resulting from an insurance company's untimely disclaimer of coverage. *See Yoda, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 931 N.Y.S.2d 18, 20-21 (N.Y. App. Div. 2011) (finding prejudice where insurer's untimely disclaimer of coverage impeded the ability to implead another party); *Federated Dep't Stores*, 807 N.Y.S.2d at 68 (finding no prejudice where insurer's assumption of defense did not impede the ability to assert a cross claim); *Nat'l Indem. Co. v. Ryder Truck Rental, Inc.*, 646 N.Y.S.2d 169, 170 (N.Y. App. Div. 1996) (affirming denial of summary judgment where fact issues regarding prejudice remained, including the viability of the insured's claim against a third party before its discharge in bankruptcy); *Martini v. Lafayette Studios Corp.*, 676 N.Y.S.2d 808, 812-13 (N.Y. Sup. Ct. 1998) (finding prejudice where the insurer's delayed disclaimer "lulled [the insured] into not being concerned about the need for any other coverage," *id.* at 813).[2] While these cases did not address the precise prejudice question raised here, they show that New York courts have not construed the requisite detrimental effect on the "character and strategy" of the insured's defense of an underlying action as narrowly as Lloyds asserts on appeal.

Finally, Lloyds contends that BYA failed to establish prejudice because it presented no evidence "that Fireman's Fund actually would have covered the *Wahl*

---

[2] The appeals court reversed the trial court's declaration in *Martini* that the insurer was estopped from denying coverage because, unlike in this case, the insurer had not represented that the underlying action was covered and had not taken control of the defense. *See Martini v. Lafayette Studios Corp.*, 710 N.Y.S.2d 39, 40-41 (N.Y. App. Div. 2000).

15

claims under its policy." Aplt. Opening Br. at 49. Lloyds argues that the district court simply assumed that Fireman's Fund would have covered the Wahl Arbitration based on (1) this court's finding in *BYA I* that the Wahl, Knotts, and Colaner claims are all interrelated, *see* 715 F.3d at 1239; (2) the Fireman's Fund policy language regarding interrelated claims; (3) Fireman's Fund's coverage of the Knotts and Colaner Arbitrations; and (4) the district court's finding regarding the available limits under the Fireman's Fund policy. In rejecting this contention, as raised in Lloyds' Rule 52(b) motion, the district court held that the issue whether coverage existed under the Fireman's Fund policy was a question of law that had been decided by this court in *BYA I*, as well as by the district court.

Lloyds contends that the district court's reasoning fails to show that BYA presented any evidence that Fireman's Fund would have, in fact, provided coverage for the Wahl Arbitration. Lloyds points to the two grounds for denying coverage that Fireman's Fund noted in its letter to BYA in November 2007, as well as Ms. Haag's testimony that she did not know whether BYA would have been successful had it sought coverage from Fireman's Fund before the Wahl Arbitration settlement. Once again, however, Lloyds cites nothing to support its legal proposition that BYA was required to establish as a matter of fact that Fireman's Fund would have agreed to cover the Wahl Arbitration. And our review of New York case law indicates that prejudice can be demonstrated based on a lost opportunity. *See Tide Water Oil Co. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n*, 281 N.Y.S. 729, 737, 751 (N.Y. Sup. Ct. 1935) (finding prejudice based on loss of opportunity to defend against claim in

underlying action); *Gen. Accident, Fire & Life Assur. Corp. v. Reggiani*, 152 N.Y.S.2d 680, 682-83 (N.Y. Sup. Ct. 1956) (finding no prejudice absent proof of lost opportunity to settle the underlying case); *see also Boston Old Colony Ins. Co. v. Lumbermens Mut. Cas. Co.*, 889 F.2d 1245, 1248 (2d Cir. 1989) (applying New York law and finding that a threat of exposure to additional liability "was prejudicial even though it never ripened into economic harm").

We therefore reject Lloyds' contention that the district court misapplied New York law in finding that BYA was prejudiced by Lloyds' coverage representations because BYA could not reverse the character and strategy of the defense of the Wahl Arbitration to allow Fireman's Fund to defend it and participate in the settlement.

## IV.    Conclusion

The judgment of the district court is affirmed.

Entered for the Court


Nancy L. Moritz
Circuit Judge

17